## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**BRENDA WESTON,**

                          **Plaintiff,**

**v.**                                       **Case No: 6:24-cv-567-PGB-LHP**

**BUC-EE'S FLORIDA, LLC,**

                          **Defendant.**

_____/

## ORDER

This cause is before the Court upon Defendant Buc-ee's Florida, LLC's ("**Defendant**") Motion for Summary Judgment. (Doc. 29 (the "**Motion**")). Plaintiff Brenda Weston ("**Plaintiff**") filed a response in opposition (Doc. 33 (the "**Response**")) and Defendant filed a reply (Doc. 35 (the "**Reply**")). The parties filed a Joint Stipulation of Agreed Material Facts. (Doc. 24 (the "**Joint Stipulation**")). Upon consideration, the Motion is due to be granted.

## I.    BACKGROUND

This premises liability action concerns Plaintiff's slip-and-fall on December 10, 2022 (the "**Incident**"), which she alleges occurred after she encountered a liquid substance (the "**liquid substance**") in Defendant's store. (*See* Doc. 24, ¶ 1). At her deposition, Plaintiff testified that she did not see the liquid substance on the floor until after she fell. (*Id.* ¶ 5). Plaintiff could not recall what the liquid substance was, if it had an odor, or if it was sticky. (*Id.* ¶¶ 6, 12). However, Plaintiff

testified that the liquid substance could have been soda, coffee, or water. (*Id.* ¶ 8). Plaintiff further testified that, after she fell, her hand was wet, and she saw a muddy streak on the ground from her shoe. (*Id.* ¶¶ 7, 10). When Plaintiff checked out at the register, she told the cashier she had slipped. (*Id.* ¶ 21). The cashier asked if Plaintiff would like to speak with a manager, and Plaintiff "declined and said she was fine." (*Id.*). Plaintiff left the premises to meet her husband at the flea market. (*Id.* ¶ 20).

At her deposition, Plaintiff was shown surveillance footage from the premises (the "**video footage**"), which captured the Incident.[1] (*Id.* ¶ 13). Plaintiff identified herself in the video footage and confirmed it was from the date of the Incident. (*Id.* ¶ 14). Plaintiff testified that she could not see any substance on the ground in the video footage. (*Id.* ¶ 15).

The video footage is comprised of three clips that play in succession. The clips appear to be shot from three different cameras. The first clip captures Plaintiff's fall, which occurs near some soda fountains. The second clip portrays Plaintiff making a purchase at a cash register and conversing with the cashier. It also shows Plaintiff leaving the store through an automatic door. The first and second clips reveal that Defendant's store was bustling with activity during and after the fall. The third clip depicts a parking lot. Plaintiff comes into view and

---

[1]    The parties nominally "attached" the video footage to their Joint Stipulation and later hand-delivered a flash drive containing the video footage for the Court's consideration. (*See* Doc. 24, ¶ 13). The parties also included several still shots from the video footage in the Joint Stipulation. (*Id.* ¶ 15).

walks to her car. The entirety of the video footage lasts approximately two minutes and thirty seconds.

In the Motion, Defendant asks the Court to enter final summary judgment in its favor and argues Plaintiff lacks evidence that Defendant had actual or constructive notice of the liquid substance, which Plaintiff must establish as an element of her claim. (Doc. 29, pp. 1–2). Defendant also argues that the video footage conclusively establishes the absence of any liquid substance on the floor at the time of Plaintiff's fall. (*Id.* at p. 2). The Court finds that only Defendant's first argument, regarding its notice of the liquid substance, merits discussion.[2]

## II.    LEGAL STANDARD

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[2]    The Court agrees with the parties that a liquid substance is not visible on the floor in the video footage. (*See, e.g.*, Doc. 24, ¶¶ 15–20). However, the Court does not find that Defendant has thus demonstrated that there "is no genuine dispute" as to the relevant material fact— specifically, that there was no liquid substance present on the ground. *See* FED. R. CIV. P. 56(a), (c); (Doc. 29, p. 5). First, Plaintiff has testified that the liquid substance may have been (clear) water. (Doc. 24, ¶ 8). The video footage was shot at an angle from some distance; the camera looks to capture the Incident from at least ten feet away. Thus, it is entirely possible that the video footage was not captured at a high enough resolution to depict water had it been present. The Court also notes that, in the video footage, after Plaintiff falls, she stands up and looks around on the floor, seemingly to examine the cause of the fall. This could be consistent with Plaintiff looking to examine the liquid substance she encountered. Further, during her fall, Plaintiff inadvertently kicks up a floor mat that folds over onto itself. Immediately thereafter, a man in a red shirt—who could either be Defendant's patron or employee—approaches Plaintiff, speaks with her, and stops to examine the area where Plaintiff fell. The man walks away without correcting the floormat. These actions are consistent with the man inspecting a liquid substance on the floor in the aftermath of the Incident and leaving the floor mat out of the way so that the floor could be cleaned. Thus, Defendant has not met its burden of demonstrating the absence of a genuine dispute regarding whether a liquid substance was present at the time of the Incident. *See* FED. R. CIV. P. 56(a), (c). Accordingly, Defendant is not entitled to summary judgment on this basis. *See id.*

as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). Alternatively, the movant may meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). But, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (citations omitted)).

"The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs and the arguments raised therein).[3]

## III.   DISCUSSION

When a negligence case arises in Florida and comes before a federal court upon its diversity jurisdiction, the federal court is required to apply Florida substantive law. *Sutton v. Wal-Mart Stores East, L.P.*, 64 F.4th 1166, 1168 (11th Cir. 2023) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Florida Statute § 768.0755 governs cases involving "[p]remises liability for transitory foreign substances in a business establishment." Under this statute, to prevail in such an action, the plaintiff must prove that the business establishment had actual or constructive notice of the dangerous condition. § 768.0755(1). It provides, in relevant part:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove

---

[3]   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

> (b) The condition occurred with regularity and was therefore foreseeable.

§ 768.0755(1)(a)–(b).

In the Motion, Defendant argues that there is no genuine dispute of material fact as to whether it had actual or constructive notice of the alleged liquid substance. (*See* Doc. 29). Citing the video footage and Plaintiff's deposition testimony, Defendant asserts that Plaintiff has failed to present evidence in support of Defendant's actual notice of the liquid substance, or of any facts relevant to constructive notice, such as "how the alleged substance came to be on the ground [or] the amount of time it had been there." (*Id.* at pp. 1–2, 16). At most, Defendant argues, the evidence establishes Plaintiff slipped and fell on a wet substance, which does not suffice to support liability under § 768.0755(1). (*See id.* at p. 2).

The burden thus shifts to Plaintiff to "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists" as to Defendant's notice of the dangerous condition. *See Porter*, 461 F.3d at 1320. Plaintiff attempts to meet this burden through two separate arguments, which the Court addresses below. (*See* Doc. 33).

### A.    Purported Evidence of Constructive Notice

In her Response, Plaintiff asserts that the evidence creates a genuine issue of material fact as to whether Defendant had constructive notice of the liquid substance. (*Id.* at pp. 4–7). Specifically, Plaintiff argues that "[l]iquid spills occurred at such regularity at this store premises" that such spills were foreseeable. (*Id.* at p. 4 (citations omitted)). Thus, by implication, Plaintiff argues Defendant had constructive notice of the liquid substance pursuant to § 766.0755(1)(b).[4] The Court assesses the four grounds Plaintiff raises in support of this assertion in turn.

#### 1.    *Store Manager's Testimony*

First, Plaintiff states that, "Through the store manager's deposition testimony, it is clear spills happen at this store with regularity. Milagros Vieira testified that during a daily ten[-]hour shift that she regularly worked, she would become aware of an alarmingly high five different spills throughout the store." (Doc. 33, p. 4). Relatedly, Plaintiff asserts that the aforementioned store manager "testifies to filling out a slip and fall incident report herself, once every three to four weeks." (*Id.* at p. 5).

These arguments are unavailing. Of note, Plaintiff does not provide any citation(s) to the referenced deposition testimony, nor does she attach this

---

[4] Plaintiff does not expressly cite evidence to support that Defendant had actual notice of the liquid substance, nor that Defendant had constructive notice of the liquid substance based upon the amount of time that it remained on the ground pursuant to § 768.0755(1)(a). Accordingly, here, the Court limits its discussion to whether there is a genuine issue of material fact regarding Defendant's constructive notice of the spill pursuant to § 768.0755(1)(b).

deposition to her Response. (*See id.* at pp. 4–5; *see generally* Doc. 33). Indeed, in its Reply, Defendant represents that "Defendant is unaware of any deposition from a 'Milagros Vieria'" in this case. (Doc. 35, p. 3).

As a result, as to this argument, Plaintiff fails to meet her burden of "present[ing] affirmative evidence to show that a genuine issue of material fact exists." *See Porter*, 461 F.3d at 1320; FED. R. CIV. P. 56(c)(3) (confirming that "[t]he court need consider only the cited materials" when resolving a motion for summary judgment); *see also HRCC, LTD*, 703 F. App'x at 816–17. Indeed, to the extent this argument is wholly unsupported by citations to the record, it is deemed waived. *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Additionally, as Defendant notes in its Reply, "[t]o prove a dangerous condition occurred with regularity" such to establish a defendant's constructive notice under § 768.0755(1)(b), "the plaintiff must provide 'evidence of recurring or ongoing problems that could have resulted from operational negligence or negligent maintenance[.]'" *Publix Super Mkts., Inc. v. Safonte*, 388 So. 3d 32, 36 (Fla. 4th DCA 2024) (quoting *Speedway, LLC v. Cevallos*, 331 So. 3d 731, 735 (Fla. 4th DCA 2021)); *see also Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 320

(Fla. 2001); (Doc. 35, p. 3). Thus, to establish a defendant's constructive notice of a dangerous condition under § 768.0755(1)(b), the plaintiff must prove the existence of similar incident(s) to the one at hand. *See, e.g.*, *Phillips v. Surfside Ventures Inc.*, 821 F. App'x 957, 960 (11th Cir. 2020) (granting summary judgment in favor of defendant as to its lack of constructive notice under § 768.0755(1)(b) of the wet steps that caused the plaintiff's fall, since the only evidence of another fall occurring "on the steps or surrounding area" involved a server who "'almost' fell on the step shortly after [plaintiff] fell" and there was "no evidence that a substance on the step is what caused that slip'"); *Rodriguez v. B.J.'s Rests., Inc.*, No. 23-cv-21834, 2023 WL 5507737, at *7 (S.D. Fla. Aug. 24, 2023) (finding a plaintiff had failed to establish constructive notice of a liquid substance on the defendant's floor under § 768.0755(1)(b) where the plaintiff had "not alleged any facts concerning a substantially similar incident to the one at issue" (quoting *Holland v. Carnival Corp.*, 50 F.4th 1088, 1096 (11th Cir. 2022))).

Here, even assuming Plaintiff had properly supported her constructive notice argument based upon the store manager's testimony, that argument would still fail. In its Reply, Defendant explains that, when Plaintiff references the testimony of "Milagros Vieria," Plaintiff likely means to reference the testimony of its store manager, Katherine Sharpton ("**Ms. Sharpton**"). (Doc. 35, p. 3). Defendant attaches Ms. Sharpton's testimony to its Reply and highlights her testimony that, for each of her ten-hour shifts at the store, Ms. Sharpton becomes aware of roughly two to five spills on Defendant's premises. (*Id.* at pp. 3–4; *see*

Doc. 35-1, 21:12–22:10). Defendant notes that its store spans more than 52,000 square feet and that Ms. Sharpton's testimony concerned spills throughout the entire store. (Doc. 35, pp. 3–4). Defendant attaches information from the Volusia County Property Appraiser's website that provides the square footage for the store and asks the Court to take judicial notice of this information. (*Id.* at p. 4 n.4; Doc. 35-2 (the "**Subject Public Record**")). The Court grants Defendant's request that it take judicial notice of the Subject Public Record, which confirms Defendant's representation regarding the expansive square footage of Defendant's store.[5]

Under the circumstances, Plaintiff's argument does not establish Defendant's constructive notice under § 768.0755(1)(b). Although Plaintiff notes that Defendant's store manager testified to becoming aware of multiple spills per shift, Plaintiff does not provide a single additional detail regarding such spills. (*See* Doc. 33, p. 4). Indeed, in her argument, Plaintiff notes that the cited spills occurred "throughout the store." (*Id.*). Simply put, Plaintiff fails to provide proof that any of the aforementioned spills were "substantially similar to the one at issue." *Rodriguez*, 2023 WL 5507737, at *7 (quoting *Holland*, 50 F.4th at 1096)). Based

---

[5] Courts may take judicial notice at any stage of a proceeding. FED. R. EVID. 201(d). Under Federal Rule of Evidence 201(b), a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." This Court has previously taken judicial notice of information from the Polk County, Florida property appraiser's website regarding a property's geographical boundaries, noting that "the information sought to be considered—geographical information accessed from a government agency's website—falls squarely within the class of materials suitable for judicial notice." *Cole v. Patton*, No. 6:19-cv-699-Orl-40, 2019 WL 3413525, at *2 (M.D. Fla. July 29, 2019) (citations omitted). Consequently, the Court finds it is proper to take judicial notice of the Subject Public Record here. (*See* Doc. 35-2).

upon the evidence before the Court, each of the cited spills may have occurred at locations wholly removed from the site of the soda fountains. For example, the spills may have been caused by a leak in the store's gas pumps or by a recurring plumbing issue in one of its restrooms. Such spills plainly would not provide Defendant with constructive notice of the liquid substance upon which Plaintiff purports to have fallen. Further, although this failure of proof would be fatal in a case involving a more modest store, it is particularly problematic given the expansive property at issue here. (*See* Doc. 35-2).

Further, Plaintiff's generic reference to testimony by a store manager regarding the frequency with which she completed slip and fall incident reports fails for the same reason. (Doc. 33, p. 5); *see Rodriguez*, 2023 WL 5507737, at *7; *see also Holland*, 50 F.4th at 1096. Namely, the Court lacks any evidence to support that the incidents described in the aforementioned reports were in any manner similar to the Incident at issue here. (*See* Doc. 33, p. 5).

### 2. *Defendant's Other Lawsuits*

Plaintiff also argues that Defendant had constructive notice under § 766.0755(1)(b) based upon three other lawsuits filed against Defendant in 2023 for "slip and fall accidents that occurred at this store." (*Id.*). Aside from providing the names and case numbers for the purported slip and fall lawsuits, Plaintiff neither asks the Court to take judicial notice of any aspect of the lawsuits, nor provides additional details regarding the subject incidents. (*See id.*). Further, in its Reply, Defendant argues "none of th[e subject cases] contain any allegations

establishing that there were similar circumstances in the same location that caused similar falls." (Doc. 35, p. 5).[6]

Here, again, Plaintiff fails to argue or present evidence to support that the incidents underlying the cited lawsuits bear any resemblance to the Incident at issue. (Doc. 33, p. 5); *see HRCC, LTD*, 703 F. App'x at 816–17 ("Presenting [] arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (citation omitted)); *Rodriguez*, 2023 WL 5507737, at *7; *Holland*, 50 F.4th at 1096. Thus, Plaintiff's argument regarding the existence of other lawsuits against Defendant fails to establish that there is a genuine issue of material fact as to Defendant's constructive notice.

> ### 3.    *Additional Testimony Regarding Inspection of the Premises*

Next, Plaintiff argues that the testimony in the case supports that Defendant's employees only "clean the flooring areas once each day, in the early morning hours." (Doc. 33, p. 5). In support, Plaintiff provides a screenshot of testimony by an unnamed witness bearing no citation. (*Id.*). Moreover, this testimony directly refutes Plaintiff's proposition, as the witness provides that "minimally, I walk the floor [looking for spills] *every hour*." (*Id.* (emphasis added)).

To the extent that Plaintiff's argument is wholly unsupported by citations to material in the record, Plaintiff has failed to meet her burden in defending against

---

[6]    Indeed, Defendant represents that one of the cited lawsuits has been dismissed by the court and that another concerned an alleged trip and fall in a parking lot. (Doc. 35, p. 5).

the Motion. *See Porter*, 461 F.3d at 1320. Additionally, and for the same reason, Plaintiff's argument is deemed waived. *See Steuerwald*, 2017 WL 5248499, at *2; *U.S. Steel Corp.*, 495 F.3d at 1287 n.13; *Resolution Tr. Corp.*, 43 F.3d at 599. Lastly, inasmuch as Plaintiff's argument is self-refuting, the Court cannot find that it supports Defendant's constructive notice of the liquid substance under § 766.0755(1)(b).

### 4.    *Nondelegable Duty*

Plaintiff also argues Defendant owed a nondelegable duty to Plaintiff to maintain its premises in a reasonably safe condition. (Doc. 33, p. 6). In support, Plaintiff cites *Wax v. Tenet Health System Hospitals, Inc.*, 955 So. 2d 1 (Fla. 4th DCA 2006) and *Regency Lake Apartments Associates v. French*, 590 So. 2d 970 (Fla. 1st DCA 1991). (*Id.*).

However, the cited cases are inapposite. Neither *Wax* nor *Regency Lake* concerned the issue of a defendant's notice of a transitory foreign substance or of any other dangerous condition. Instead, *Wax* involved a medical malpractice action and is thus wholly unrelated to the case at bar. *See* 955 So. 2d at 4. Further, *Regency Lake* concerned the plaintiff's trip and fall on a tree root in a pet walking area that she was required to use by the defendant apartment complex. 590 So. 2d at 971. At issue in *Regency Lake* was whether the defendant owed a duty to plaintiff at all, since defendant argued the tree root was an open and obvious condition and that the premises were owned and controlled by another party. *Id.* at 972. As such, neither *Wax* nor *Regency Lake* considered or applied § 766.0755.

Further, of the cited cases, only *Wax* discusses the doctrine of nondelegable duty. *Wax*, 955 So. 2d at 6–11. There, the court explains that this doctrine creates an exception to the independent contractor rule of tort law. *See generally id.* More particularly, the nondelegable duty doctrine holds that certain duties cannot be delegated to a third party such as an independent contractor. *See id.*; *see also Safonte*, 388 So. 3d at 36–37 (applying the doctrine in the slip and fall context and noting that "[t]he non-delegable duty doctrine represents a narrow exception to the rule that an 'employer' who retains an independent contractor is not liable for the negligent acts of that contractor." (citation omitted)). Such facts are simply not at issue here.

### B.    Spoliation

Lastly, Plaintiff argues that, to the extent that Plaintiff cannot prove Defendant's notice of the spill, this is due to Defendant's alleged spoliation of relevant evidence. (Doc. 33, pp. 2–3). To this end, Plaintiff attaches a letter that Plaintiff's counsel sent to Defendant asking Defendant to preserve relevant evidence regarding the Incident, including any "video recordings of the area where[ ]in the incident . . . occurred for the twenty-four hour period preceding the incident." (Doc. 33-1 (the "**Preservation Letter**")).

Plaintiff represents that the tracking information for the Preservation Letter indicates that it was received by Defendant on February 3, 2023, or nearly eight weeks after the Incident. (*See* Doc. 33, p. 2). However, Plaintiff does not provide any other evidence regarding Defendant's alleged spoliation. (*Id.* at pp. 2–3). For

example, Plaintiff does not provide any evidence regarding *who* edited the video footage or, importantly, *when* the video footage was edited, including whether this occurred before or after the Preservation Letter was received by Defendant. (*See id.*). Moreover, Plaintiff does not describe any attempts Plaintiff made through discovery to determine the answers to such questions.[7] (*See id.*).

Plaintiff inconsistently describes Defendant's editing of the surveillance footage as negligent or purposeful. (*See id.*). However, Plaintiff ultimately maintains that "Florida state courts have ruled that the issue of 'bad faith' is irrelevant if the evidence was so essential to the party's case that it could not proceed without it." (*Id.* at p. 2). Plaintiff thus asserts that "[i]t must be assumed that the deleted CCTV footage was favorable to the Plaintiff and intentionally deleted by the Defendant." (*Id.* at p. 3).

The Court acknowledges that it is regrettable that the entirety of the surveillance footage was not preserved. However, the Court cannot find that Plaintiff's argument creates a genuine issue of material fact as to Defendant's notice of the liquid substance.

As an initial matter, the Court notes that Plaintiff has never moved for the imposition of sanctions for Defendant's alleged spoliation of evidence. Notably, the discovery period in this case closed six months ago. (Doc. 14, p. 1). Further, Plaintiff's Response to the instant Motion, wherein Plaintiff raises the spoliation

---

[7] According to the Case Management and Scheduling Order for this case, the discovery deadline expired on August 5, 2024. (Doc. 14, p. 1).

argument, was filed more than five months ago. (Doc. 33, pp. 2–3). However, despite Plaintiff's knowledge that Defendant has moved for summary judgment as to its lack of notice of the liquid substance, Plaintiff has not moved for relevant relief.[8] (*See* Doc. 29). Under the circumstances, it is not clear that the issue of Defendant's alleged spoliation is properly before the Court.[9]

However, even assuming the issue of Defendant's alleged spoliation is properly before the Court, Plaintiff fails to demonstrate her entitlement to spoliation sanctions here. To begin, the Court notes that "federal law governs the imposition of sanctions for failure to preserve evidence in a diversity suit." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Further, "[w]hen considering a claim of spoliation in a case involving electronically stored information (ESI), courts look to . . . Federal Rule of Civil Procedure 37(e)." *Burns v. Medtronic, Inc.*, No. 8:15-cv-2330-T-17TBM, 2017 WL 11633269, at *2 (M.D. Fla. Aug. 9, 2017). Rule 37(e) provides as follows:

> **(e) Failure to Preserve Electronically Stored Information [("ESI")].** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

---

[8]   Of note, the final deadline for filing pretrial motions in this matter expired on December 23, 2024. (Doc. 14, p. 3).

[9]   Defendant argues in its Reply that the spoliation issue is not properly before the Court as it has only been raised in Plaintiff's response to Defendant's summary judgment motion. (*See* Doc. 35, p. 2). While this argument carries persuasive force, Defendant fails to provide legal authority in support of this point. (*Id.*). Further, Plaintiff fails to provide any argument or legal authority to support that such an argument can be raised in response to summary judgment. (*See* Doc. 33). In any event, the Court finds that Plaintiff's spoliation argument is due to be denied on the merits.

> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> **(A)** presume that the lost information was unfavorable to the party;
>>
>> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> **(C)** dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

Accordingly, under Rule 37(e), a party is entitled to sanctions for spoliation only after demonstrating the "information [was] lost because [the party's opponent] failed to take reasonable steps to preserve it . . . ." FED. R. CIV. P. 37(e); *see also Burns*, 2017 WL 11633269, at *3–5 (discussing and applying the "reasonable steps" requirement).

Further, under Rule 37(e), to obtain the more severe sanctions for spoliation—such as a presumption that the "lost information was unfavorable to" one's opponent or an adverse inference instruction to this effect—a party must prove the alleged spoliator acted with the requisite intent. FED. R. CIV. P. 37(e)(2). Specifically, the party must establish that the opponent "acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2). The Eleventh Circuit has held that this "intent to deprive" standard is "the equivalent of bad faith in other spoliation contexts." *Skansa USA Civil Se. Inc. v. Bagelheads Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023) (citing FED. R. CIV. P.

37(e)(2)). Further, "[i]n this Circuit's spoliation precedents, bad faith 'generally means destruction [of evidence] *for the purpose of hiding* adverse evidence.'" *Id.* (quoting *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (emphasis added)). Accordingly, "[t]his standard is more than mere negligence . . . ."[10] *Id.* (citations omitted).

Here, Defendants' surveillance footage of its store constitutes ESI. *See ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018). However, Plaintiff has failed to demonstrate entitlement to the relevant spoliation sanctions under Rule 37(e) for at least two reasons.

First, Plaintiff has not established that the surveillance footage was "lost because [Defendant] failed to take reasonable steps to preserve" it. *See* FED. R. CIV. P. 37(e). Inasmuch as Plaintiff cites to the state court spoliation standard, Plaintiff fails to address this requirement. (*See* Doc. 33, pp. 2–3). Moreover, the Court is wholly unaware of the circumstances that led to the surveillance footage becoming unavailable. For example, the Court does not know whether this occurred before or after Defendant received the Preservation Letter or whether it occurred pursuant to Defendant's routine practices. Thus, based on the record before it, the Court cannot find that Plaintiff has established that the surveillance footage was

---

[10] The Court also notes that, to the extent the Court has inherent authority to sanction a party for spoliation of evidence, the bad faith standard also applies to parties' requests for severe sanctions such as adverse inference instructions. *See, e.g.*, *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (citing *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)) ("In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith."); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all Fifth Circuit decisions prior to October 1, 1981).

"lost because [Defendant] failed to take reasonable steps to preserve it . . . ." FED. R. CIV. P. 37(e).

Second, Plaintiff's spoliation argument fails because Plaintiff has not proven Defendant acted with the requisite intent for the relief Plaintiff appears to seek. Perhaps because the matter has been raised in response to summary judgment rather than in a motion for sanctions, the precise nature of the relief sought by Plaintiff is not abundantly clear. (*See* Doc. 33, pp. 2–3). However, to the extent Plaintiff states "[i]t must be assumed that the deleted CCTV footage was favorable to the Plaintiff," Plaintiff seems to ask the Court to "presume the lost information was unfavorable to [Defendant]" or to provide an adverse inference instruction to this effect. (*Id.* at p. 3); FED. R. CIV. P. 37(e)(2)(A)–(B). Contrary to Plaintiff's argument in the Response, to demonstrate her entitlement to such sanctions, Plaintiff must prove Defendant destroyed the surveillance footage in a bad faith attempt to deprive Plaintiff of adverse evidence. *See Skansa*, 75 F.4th at 1312. However, given the scant record before the Court regarding the circumstances under which the surveillance footage became unavailable, the Court simply cannot find that Plaintiff has established such bad faith here. (*See* Doc. 33, pp. 2–3).

Therefore, even considering Defendant's alleged spoliation, Plaintiff still fails to demonstrate the existence of a genuine issue of material fact as to Defendant's notice of the liquid substance. Consequently, Defendant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a).

IV.    **CONCLUSION**

As a result of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

2.    The Clerk of Court is **DIRECTED** to terminate any pending motions and thereafter close the file.

**DONE AND ORDERED** in Orlando, Florida on February 14, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties